GEORGE S. CARDONA
United States Attorney
THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division
DOUGLAS A. AXEL (Cal. Bar #173814)
Deputy Chief, Major Frauds Section
RICHARD E. ROBINSON (Cal. Bar #090840)
ROBERT J. MCGAHAN (Cal. Bar #196568)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:    (213) 894-0713
    Facsimile:    (213) 894-6269
    E-mail:   Richard.Robinson@usdoj.gov
              Doug.Axel@usdoj.gov
              Robert.McGahan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED

2007 SEP 18 AM 10: 35

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY. ___

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 07-__ **07-00964** |
|---|---|
| Plaintiff, | **PLEA AGREEMENT FOR DEFENDANT WILLIAM S. LERACH PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 11(c)(1)(C)** |
| v. | |
| WILLIAM S. LERACH, | |
| Defendant. | |

1.   This constitutes the binding plea agreement between WILLIAM S. LERACH ("defendant"), on the one hand, and the United States Attorney's Office for the Central District of California, on the other hand (the "USAO"). Except as provided in paragraphs 22(a) and (b) below, this agreement is limited to the USAO and cannot bind any other federal, state, or local prosecuting, administrative or regulatory authorities.

/ / /

PLEA

2.   Defendant gives up the right to indictment by a grand jury, waives any applicable statute of limitations, and agrees to plead guilty to a one-count information in the form attached to this agreement or a substantially similar form.

NATURE OF THE OFFENSE

3.   In order for defendant to be guilty of count one of the information, which charges a violation of Title 18, United States Code, Section 371, the following must be true:

(a)   Beginning in or before 1981, and continuing at least into 2002, there was an agreement between two or more persons to commit at least one of the crimes charged in the information, namely:

(i) to obstruct justice by corruptly influencing, obstructing, and impeding, and endeavoring to influence, obstruct, and impede, the due administration of justice in lawsuits filed and litigated in courts of the United States, in violation of Title 18, United States Code, Section 1503; and

(ii) to make false material declarations under oath in proceedings before and ancillary to courts of the United States, in violation of Title 18, United States Code, Section 1623(a);

(b)   defendant became a member of the conspiracy, that is, he joined in the illegal agreement, knowing of at least one of its objects and intending to help accomplish it; and

(c)   one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

4. Defendant admits that defendant is, in fact, guilty of this offense, as described in count one of the information.

PENALTIES

5. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is five-years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6. Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7. Defendant also understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

8. Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including revocation or suspension of his license to practice law. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's plea of guilty.

1    9.   The parties agree and stipulate that, in accordance

2  with United States Sentencing Guidelines § 5E1.1(b)(2),

3  determining complex issues of fact concerning restitution, if

4  any, that should be awarded would complicate or prolong the

5  sentencing process to a degree that the need to provide

6  restitution to any victim is outweighed by the burden on the

7  sentencing process.

8                          FACTUAL BASIS

9    10.   Defendant and the USAO agree and stipulate to the

10  statement of facts set forth in Exhibit A hereto. This statement

11  of facts includes facts sufficient to support a plea of guilty

12  to the charge described in this agreement. It is not meant to be

13  a complete recitation of all facts relevant to the underlying

14  criminal conduct or all facts known to either party that relate

15  to that conduct.

16        WAIVER OF CONSTITUTIONAL AND OTHER RIGHTS

17    11.   By pleading guilty, defendant gives up the following

18  rights:

19            (a)   The right to persist in a plea of not guilty.

20            (b)   The right to a speedy and public trial by jury.

21            (c)   The right to the assistance of legal counsel at

22  trial, including the right to have the Court appoint counsel for

23  defendant for the purpose of representation at trial. (In this

24  regard, defendant understands that, despite his plea of guilty,

25  he retains the right to be represented by counsel -- and, if

26  necessary, to have the Court appoint counsel if defendant cannot

27  afford counsel -- at every other stage of the proceeding.)

28            (d)   The right to be presumed innocent and to have the

1   burden of proof placed on the government to prove defendant

2   guilty beyond a reasonable doubt.

3         (e)   The right to confront and cross-examine witnesses

4   against defendant.

5         (f)   The right, if defendant wished, to testify on

6   defendant's own behalf and present evidence in opposition to the

7   charges, including the right to call witnesses and to subpoena

8   those witnesses to testify.

9         (g)   The right not to be compelled to testify, and, if

10   defendant chose not to testify or present evidence, to have that

11   choice not be used against defendant.

12     12.   By pleading guilty, defendant gives up any and all

13   rights to pursue any affirmative defenses, Fourth Amendment or

14   Fifth Amendment claims, and other pretrial motions that could be

15   filed on his behalf, including assertion of any defense based on

16   statute of limitations or venue. Further, as a result of

17   defendant's consent to the assistance of a settlement judge in

18   the negotiation of this binding plea agreement, defendant waives

19   any right to pursue any claim that this binding plea agreement

20   was reached in violation of Federal Rule of Criminal Procedure

21   11(c)(1).

22                   SENTENCING FACTORS

23     13.   Defendant understands that the Court is required to

24   consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7),

25   including the kinds of sentence and sentencing range established

26   under the United States Sentencing Guidelines ("U.S.S.G." or

27   "Sentencing Guidelines") in determining defendant's sentence.

28     14.   Defendant and the USAO have no agreement concerning

the applicable Sentencing Guidelines or Sentencing Guidelines factors.

15.   As part of this binding plea agreement, defendant and the USAO agree that an appropriate disposition of this case is that the court impose: a sentence of imprisonment within the range of 12-24 months imprisonment, with the court retaining discretion to substitute community confinement or home detention for no more than one-half of the term of imprisonment imposed; a fine of $250,000; a three-year period of supervised release (with conditions, which may include community confinement or home detention, to be fixed by the Court); and a special assessment of $100.

16.   There is no agreement as to defendant's criminal history or criminal history category.

17.   The Court will determine the facts and calculations relevant to sentencing and decide whether to agree to be bound by this agreement. Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, and (b) correct any and all factual misstatements relating to the calculation of the sentence.

18.   Defendant understands and agrees that this agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). So long as defendant does not breach the agreement, defendant may withdraw from this agreement and render it null and void if the Court refuses to be bound by this agreement. The USAO may also withdraw from this agreement and render it null and void if the Court refuses to be bound by this agreement.

## DEFENDANT'S OBLIGATIONS

19.   Defendant agrees that he will:

(a)   Deliver to the USAO at the time of this Agreement an executed waiver of indictment in substantially the form attached hereto as Exhibit B and an executed waiver of the statute of limitations in substantially the form attached hereto as Exhibit C.

(b)   Plead guilty as set forth in this agreement.

(c)   Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

(d)   Not knowingly and willfully fail to: (i) appear for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

(e)   Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

(f)   Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

(g)   Pay the applicable special assessment at or before the time of sentencing.

(h)   Within seven days of sentencing, pay the fine imposed by the Court, up to a maximum of $250,000. In this regard, defendant agrees that consideration of the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C), and (a)(3), justifies a fine amount of $250,000.

20.   Defendant further agrees to forfeit to the United

7

States the amount of $7,750,000 (the "Forfeitable Currency"),
which defendant agrees shall be forfeited through
administrative, judicial criminal or judicial civil forfeiture
(at the sole election of the United States), pursuant to 28
U.S.C. § 2461(c), 18 U.S.C. § 981(a)(1)(C) and/or 18 U.S.C.
§ 981(a)(1)(A). Defendant further agrees:

(a)   That the Forfeitable Currency constitutes or is
derived from net proceeds of the conspiracy to obstruct justice
(18 U.S.C. § 1503) and to make material false statements under
oath (18 U.S.C. § 1623) in violation of 18 U.S.C. § 371
described in count one of the information;

(b)   That said conspiracy resulted in net proceeds in
excess of $7,750,000;

(c)   That at the sole and absolute discretion of the
USAO, the USAO may elect to cause to be entered (i) a money
judgment of forfeiture in the amount of the Forfeitable Currency
and apply the Forfeitable Currency toward satisfaction of the
judgment and/or (ii) a preliminary and final order of forfeiture
of the Forfeitable Currency;

(d)   That the Forfeitable Currency shall be paid to
the United States in the following manner and by the following
means:

(i) Within seven days of sentencing, defendant
shall pay to the United States the amount of $3,750,000 by
electronic funds transfers. Said transfer of the funds shall be
made to the Federal Reserve Bank of New York, 33 Liberty Street,
New York, New York, 10045, pursuant to instructions to be
provided by the USAO. The government will hold the funds in the

1 Seized Asset Deposit Funds Account until the funds are applied
2 to satisfy any money judgment and/or are forfeited pursuant to
3 any final order of forfeiture described in paragraph 20(c)
4 above; and

5         (ii) Within 180 days of sentencing, defendant
6 shall pay to the United States the amount of $4,000,000 by
7 electronic funds transfers. Said transfer of the funds shall be
8 made to the Federal Reserve Bank of New York, 33 Liberty Street,
9 New York, New York, 10045, pursuant to instructions to be
10 provided by the USAO. The government will hold the funds in the
11 Seized Asset Deposit Funds Account until the funds are applied
12 to satisfy any money judgment and/or are forfeited pursuant to
13 any final order of forfeiture described in paragraph 20(c)
14 above.

15        (e)  That defendant will have clear and sole title to
16 the Forfeitable Currency he promises to deliver to the USAO when
17 it is transferred;

18        (f)  Not to contest the forfeiture of the Forfeitable
19 Currency in any administrative or judicial proceeding;

20        (g)  To abandon, relinquish, and waive, and by
21 executing this agreement defendant hereby abandon, relinquish
22 and waive any and all rights in the Forfeitable Currency in
23 favor of the United States;

24        (h)  To waive, and by executing this agreement
25 defendant does waive, all constitutional and statutory
26 challenges to forfeiture of the Forfeitable Currency on any
27 grounds, including any statutes of limitations and the Excessive
28 Fines Clause;

(i)   To take all steps as requested by the USAO that are reasonable to pass to the United States clear title to the Forfeitable Currency, including, without limitation, the execution of a consent decree of forfeiture, the completing of any other legal documents required for the transfer of title to the United States, and causing defendant's spouse to execute a consent to decree of forfeiture, all such documents to be delivered to the United States along with the electronic funds transfers described in paragraph 20(d) above;

(j)   Not to assist any other person in any effort falsely to contest the forfeiture of the Forfeitable Currency;

(k)   That forfeiture of the Forfeitable Currency shall not be counted toward satisfaction of any special assessment, fine, restitution, or any other penalty the Court may impose, nor shall it be counted toward satisfaction of any taxes, penalties, or interest owed to the Internal Revenue Service or any other taxing authority; and

(l)   With respect to any forfeiture of the Forfeitable Currency, to waive and relinquish, and by executing this agreement defendant does waive and relinquish the requirements of: (i) Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at the sentencing, and incorporation of the forfeiture in the judgment; and (ii) 21 U.S.C. § 853(p)(1) regarding due diligence, transfer to third party, placement beyond the jurisdiction of the Court, substantial diminution of value and commingling.

21.   Defendant is not required by this agreement to cooperate in any way with the USAO, the United States Attorney's Offices for each of the other 93 judicial districts of the United States ("the other USAOs"), the United States Department of Justice ("DOJ"), the Internal Revenue Service, the Postal Inspection Service, or any other federal law enforcement agency.

THE USAO'S OBLIGATIONS

22.   If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

(a)   Not to further prosecute defendant for violations of federal law occurring prior to the execution of this agreement and arising out of: (i) the conduct charged in the first superseding indictment in <u>United States v. Milberg Weiss Bershad & Schulman LLP, et al.</u>, Cr. No. 05-587(A)-JFW and/or described in Exhibit A hereto; (ii) payments to or for the benefit of stockbrokers, non-lawyers, and/or lawyers for serving as plaintiffs and/or for referring other persons and/or entities to serve as plaintiffs; (iii) requests to courts for reimbursement of fees and costs of a damages expert witness and/or his relatives and/or his associated entities based in Princeton, New Jersey, and Hilton Head, South Carolina (collectively the "Princeton Expert"); (iv) any payments to, or on behalf of, the Princeton Expert; (v) the Princeton Expert's participation as an expert witness or consultant in cases litigated by Milberg Weiss (as defined in Exhibit A hereto) or Coughlin Stoia Geller Rudman & Robbins, LLP, formerly known as Lerach Coughlin Stoia Geller Rudman & Robbins, LLP ("the Lerach Firm"); (vi) the Princeton Expert's financial relationship with

11

1   PNC Bank; (vii) election, campaign, or other political

2   contributions made using only funds generated by the conduct

3   described in (i) — (v) above; and (viii) defendant's investment

4   in, or relationship with, the Acorn Technology Fund

5   (collectively, "the non-prosecution conduct"). The non-

6   prosecution provisions of this paragraph are binding on the

7   USAO, the other USAOs, and DOJ. Defendant understands and agrees

8   that the USAO, the other USAOs, and DOJ are free to prosecute

9   defendant for any other unlawful past conduct not specifically

10  exempted by this agreement or any illegal conduct that occurs

11  after the date of this agreement.

12          (b)  Not to prosecute the Lerach Firm for violations

13  of federal law occurring prior to the execution of this

14  agreement and arising out of "the non-prosecution conduct" as

15  defined in paragraph 22(a).  The non-prosecution provisions of

16  this paragraph are binding on the USAO, the other USAOs, and

17  DOJ. Defendant understands and agrees that the USAO, the other

18  USAOs, and DOJ are free to prosecute the Lerach Firm for any

19  other unlawful past conduct not specifically exempted by this

20  agreement or any illegal conduct that occurs after the date of

21  this agreement.

22          (c)  Not to prosecute the following current partners

23  in the Lerach Firm, Patrick J. Coughlin and Keith F. Park, for

24  violations of federal law occurring prior to the execution of

25  this agreement and arising out of "the non-prosecution conduct"

26  as defined in paragraph 22(a).  The non-prosecution provisions

27  of this paragraph are binding solely on the USAO and do not bind

28  the other USAOs or DOJ.  Defendant understands and agrees that

1  the USAO remains free to prosecute Partners Patrick J. Coughlin

2  and Keith F. Park for any other unlawful past conduct not

3  specifically exempted by this agreement or any illegal conduct

4  that occurs after the date of this agreement.

5          (d)  Not to pursue any additional civil or criminal

6  forfeiture claims against defendant based on conduct occurring

7  prior to the execution of this agreement and arising out of the

8  non-prosecution conduct.

9          (e)  To abide by all sentencing stipulations contained

10  in this agreement.

11                    BREACH OF AGREEMENT

12      23.  If defendant, at any time after the execution of this

13  agreement knowingly and willfully violates or fails to perform

14  any of defendant's obligations under this agreement ("a

15  breach"), the USAO may declare this agreement breached. If the

16  USAO declares the agreement breached, and the Court finds such a

17  breach to have occurred, defendant will not be able to withdraw

18  defendant's guilty plea (if, at the time of the breach, he had

19  previously entered his guilty plea), and the USAO will be

20  relieved of all its obligations under this agreement.

21      24.  Following a knowing and willful breach of this

22  agreement by defendant, should the USAO elect to pursue any

23  charge that was dismissed or that it would have been obligated

24  to dismiss or that was not filed as a result of this agreement,

25  then:

26          (a)  Defendant agrees that any applicable statute of

27  limitations is tolled between the date of defendant's signing of

28  this agreement and the commencement of any such prosecution or

13

1  action.

2          (b)  Defendant gives up all defenses based on the

3  statute of limitations, any claim of pre-indictment delay, or

4  any speedy trial claim with respect to any such prosecution,

5  except to the extent that such defenses existed as of the date

6  of defendant's signing this agreement.

7          (c)  Defendant agrees that: (i) any statements made by

8  defendant, under oath, at the guilty plea hearing (if there was

9  such a hearing); (ii) the stipulated factual basis statement in

10 this agreement; and (iii) any evidence derived from such

11 statements, are admissible against defendant in any prosecution

12 of defendant, and defendant shall assert no claim under the

13 United States Constitution, any statute, Rule 410 of the Federal

14 Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

15 Procedure, or any other federal rule, that the statements or

16 evidence derived from any statements should be suppressed or are

17 inadmissible.

18          LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

19      25.  Defendant gives up the right to appeal any sentence

20 imposed by the Court and the manner in which the sentence is

21 determined, provided that the sentence is within the range set

22 forth in paragraph 15 and is constitutional. Defendant also

23 gives up any right to bring a post-conviction collateral attack

24 on the conviction or sentence.

25      26.  The USAO gives up its right to appeal the sentence,

26 provided that the Court imposes a sentence within the range set

27 forth in paragraph 15.

28

14

## COURT NOT A PARTY

27.   The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations.

28.   This agreement has no effect on any proceedings against defendant not expressly mentioned herein.

## NO ADDITIONAL AGREEMENTS

29.   Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel. Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

30.   The parties agree and stipulate that this agreement will be considered part of the record of defendant's guilty plea hearing as if this entire agreement had been read into the record of such proceedings.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

31.   This agreement is effective upon signature by
defendant, defendant's attorney, and an Assistant United States
Attorney.

AGREED AND ACCEPTED

UNITED STATES DEPARTMENT OF JUSTICE
(as to paragraphs 22(a) and (b) only)

_____        9/17/07
GEORGE S. CARDONA                       Date
United States Attorney


AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

_____        9/17/07
GEORGE S. CARDONA                       Date
United States Attorney

_____        9/17/07
DOUGLAS A. AXEL                         Date
Assistant United States Attorney
Deputy Chief, Major Frauds Section

_____        9/17/07
RICHARD E. ROBINSON                     Date
Assistant United States Attorney
Major Frauds Section

_____        9/17/07
ROBERT J. McGAHAN                       Date
Assistant United States Attorney
Major Frauds Section

16

1    I, WILLIAM S. LERACH, have read this agreement and

2  carefully discussed every part of it with my attorney. I

3  understand the terms of this agreement, and I voluntarily agree

4  to those terms. My attorney has advised me of my rights, of

5  possible defenses, of the Sentencing Guideline provisions, and

6  of the consequences of entering into this agreement. No promises

7  or inducements have been made to me other than those contained

8  in this agreement. No one has threatened or forced me in any way

9  to enter into this agreement. Finally, I am satisfied with the

10  representation of my attorney in this matter.

11

12  _____          9/17/07
    WILLIAM S. LERACH                        Date
13  Defendant

14    I am WILLIAM S. LERACH's attorney. I have carefully

15  discussed every part of this agreement with my client. Further,

16  I have fully advised my client of his rights, of possible

17  defenses, of the sentencing factors set forth in 18 U.S.C.

18  § 3553(c), including the relevant Sentencing Guidelines

19  provisions, and of the consequences of entering into this

20  agreement. To my knowledge, my client's decision to enter into

21  this agreement is an informed and voluntary one.

22

23  _____          9/17/07
    JOHN KEKER, ESQ.                         Date
24  KEKER & VAN NEST LLP
    Counsel for Defendant
25  WILLIAM S. LERACH

26

27

28

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CR 07-____ |
| | ) | |
| Plaintiff, | ) | **I N F O R M A T I O N** |
| | ) | |
| v. | ) | [18 U.S.C. § 371: Conspiracy] |
| | ) | |
| WILLIAM S. LERACH, | ) | |
| | ) | |
| Defendant. | ) | |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 371]

[Conspiracy]

1.    Beginning on a date unknown but at least as early as in or about 1981, and continuing into at least in or about 2002, within the Central District of California and elsewhere, defendant WILLIAM S. LERACH, together with the law firm Milberg Weiss Bershad Hynes & Lerach LLP (formerly known as "Milberg Weiss Bershad Spechthrie & Lerach") ("Milberg Weiss"); David J. Bershad ("Bershad"); other partners in Milberg Weiss; and others known and unknown to the United States Attorney, knowingly combined, conspired, and agreed to commit the following offenses

DAA:RER:RJM

against the United States:

(a)   to commit obstruction of justice by corruptly influencing, obstructing, and impeding, and endeavoring to influence, obstruct, and impede, the due administration of justice in lawsuits filed and litigated in federal courts, in violation of Title 18, United States Code, Section 1503; and

(b)   to make false material declarations under oath in proceedings before and ancillary to courts of the United States, in connection with lawsuits filed and litigated in federal courts, in violation of Title 18, United States Code, Section 1623(a).

2.   In furtherance of the conspiracy and to accomplish its objects, defendant LERACH and other co-conspirators committed and caused others to commit the following overt acts, among others:

(a)   On or about November 6, 1996, in <u>Steven Cooperman v. Individual, Inc. et al.</u>, 96-CV-12272 (United States District Court, District of Massachusetts), in which Steven Cooperman was a named plaintiff, Cooperman falsely certified, under penalty of perjury, that he would "not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court."

(b)   On or about December 13, 1999, in <u>Helene Giarputo and Seymour Lazar v. Xerox Corp. et al.</u>, 99-CV-2374 (United States District Court, District of Connecticut), in which Seymour Lazar was a named plaintiff, Lazar falsely certified, under penalty of perjury, that he would "not accept any payment for

2

1  serving as a representative party on behalf of a class beyond

2  plaintiff's pro rata share of any recovery, except such

3  reasonable costs and expenses (including lost wages) directly

4  relating to the representation of the Class as ordered or

5  approved by the Court."

6  SALLY L. MELOCH
   Acting United States Attorney

7  

8  *[signature]* Daniel A. Goodman, Deputy Chief,
   Criminal Division, FOR:

9  THOMAS P. O'BRIEN
   Assistant United States Attorney

10 Chief, Criminal Division

11 DOUGLAS A. AXEL
   Assistant United States Attorney

12 Deputy Chief, Major Frauds Section

13 RICHARD E. ROBINSON
   ROBERT J. McGAHAN

14 Assistant United States Attorneys
   Major Frauds Section

15 

16 

17 

18 

19 

20 

21 

22 

23 

24 

25 

26 

27 

28

**EXHIBIT A**

**STATEMENT OF FACTS IN SUPPORT OF WILLIAM S. LERACH
PLEA AGREEMENT AND INFORMATION**

Defendant WILLIAM S. LERACH ("LERACH") represents and admits that the following facts are true.  Pseudonyms, capitalized terms, and case names herein have the same meanings as are ascribed to them in the first superseding indictment in <u>United States v. Milberg Weiss Bershad & Schulman LLP</u>, et al., CR 05-587(A)-JFW (the "FSI").

Introduction

1.  LERACH joined Milberg Weiss in 1976. LERACH worked in Milberg Weiss's office in San Diego, California.  LERACH later became a name partner in Milberg Weiss Bershad Hynes & Lerach, LLP, formerly known as "Milberg Weiss Bershad Specthrie & Lerach" (hereinafter "Milberg Weiss").

2.  Milberg Weiss specialized in serving as plaintiff's counsel in class actions and shareholder derivative actions (collectively "Class Actions") brought in federal and state courts throughout the United States, including in the Central District of California.

3.  As counsel representing class members or shareholders not before the courts (collectively "absent class members"), Milberg Weiss and its attorneys, including LERACH, had fiduciary duties of loyalty, honesty, and trust to absent class members.  Individuals who served as representative plaintiffs on behalf of absent class

members (hereinafter "named plaintiffs") likewise had fiduciary duties of loyalty, honesty, and trust to those absent class members.

### Overview of Secret Payment Arrangement

4. Beginning in or about the 1970s and continuing at least into 2002, in order to facilitate the recruitment and retention of named plaintiffs, certain senior Milberg Weiss partners agreed with various individuals that Milberg Weiss would secretly pay those individuals a portion of the attorneys' fees that Milberg Weiss obtained in Class Actions in which such individuals served, or caused a relative or associate to serve, as a named plaintiff.

5. The Milberg Weiss partners who agreed during the relevant times to secretly pay the named plaintiffs included LERACH, David J. Bershad ("Bershad"), and others.

6. The individuals who agreed to serve as named plaintiffs in Class Actions pursuant to the secret payment arrangement with Milberg Weiss included Steven G. Cooperman ("Cooperman") and others. Generally, these individuals were promised that they would be paid approximately 10% of the net attorneys' fees that Milberg Weiss obtained in their respective Class Actions.  They were also told that the amount would be lower if they were paid in cash or if Milberg Weiss had payment obligations on the same case to others.

7. By entering into such payment arrangements, LERACH and other conspiring partners were able to secure a reliable source of

- 2 -

individuals who were ready, willing, and able to serve as named plaintiffs in Class Actions that Milberg Weiss wanted to bring. In addition, some of these individuals would investigate and propose to LERACH and other conspiring partners lucrative potential Class Actions for Milberg Weiss to bring. Such payment arrangements generally enabled Milberg Weiss to file more Class Actions and to file them more quickly than would be possible absent such arrangements.

8.   At all relevant times, LERACH, other conspiring partners, and the paid plaintiffs understood that, to the extent necessary, they would make or cause to be made false and/or misleading statements in documents filed in federal Class Actions (including complaints, motions, and under-oath certifications) and in under-oath testimony and other discovery in such actions in order to conceal the existence of their secret payment arrangements.

9.   LERACH believed that discovery in a Class Action of the secret payment arrangement with a named plaintiff could have resulted in, among other things: (a) the disqualification of the named plaintiff from serving as a class representative in that action and other Class Actions; and (b) the disqualification of Milberg Weiss, including the conspiring partners, from serving as class counsel in that action and other Class Actions.

10.   LERACH and other conspiring partners concealed the payments to named plaintiffs. They had the paid plaintiffs select intermediary law firms, lawyers, and other professionals through

- 3 -

whom they would be paid their payments. LERACH and other conspiring partners would cause Milberg Weiss checks to be issued to these intermediaries, with the understanding and intent that the money would be distributed to or used for the benefit of the paid plaintiffs. LERACH and other conspiring partners knew that although these payments were variously documented and described as, among other things, "referral fees" and "professional fees" owed by Milberg Weiss to the intermediaries, they were actually disguised payments to the paid plaintiffs.

### Secret Payment Arrangements With
### Steven Cooperman

11.   LERACH, on behalf of Milberg Weiss, established a secret payment arrangement with Steven Cooperman, pursuant to which Milberg Weiss would pay Cooperman a percentage of the attorneys' fees that Milberg Weiss obtained in Cooperman's cases, as described in paragraph 6 above. LERACH discussed Cooperman's payment arrangement with other conspiring partners.

12.   Cooperman, Cooperman Plaintiff 1, Cooperman Plaintiff 2, and certain of Cooperman's relatives and associates served as named plaintiffs for Milberg Weiss in numerous other Class Actions. To satisfy Milberg Weiss's payment obligation to Cooperman on these cases, LERACH caused Milberg Weiss checks to be written to intermediary attorneys and their associated law firms selected by Cooperman, namely Richard R. Purtich and James P. Tierney (referred to as Cooperman Intermediary A and Cooperman

Intermediary B in the FSI). These payments were documented and disguised as, among other things, "referral fees" and the "share" of attorneys' fees owed by Milberg Weiss to these intermediaries, even though such payments represented monies that Milberg Weiss owed to Cooperman, were made solely to satisfy Milberg Weiss's payment obligation to Cooperman, and would be used for Cooperman's benefit or at his direction.

<u>Overt Act</u>

13.   In furtherance of the conspiracy described above, LERACH and other members of the conspiracy committed and caused to be committed the following act, among others:

On or about November 6, 1996, in the <u>Individual</u> class action, brought by Milberg Weiss in the United States District Court for the District of Massachusetts, in which Cooperman was a named plaintiff, Cooperman falsely certified, under penalty of perjury, that he would "not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court."

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>WILLIAM S. LERACH,<br><br>DEFENDANT. | CASE NUMBER<br><br>CR 07-_____<br><br><br>**WAIVER OF INDICTMENT** |

I,  **William S. Lerach** , the above-named defendant, who is accused of violating Title 18, United States Code, Section 371, Conspiracy to Obstruct Justice and to Make False Material Statements being advised of the nature of the charge(s), the proposed information, and of my rights, hereby waive in open court on ____ prosecution by indictment and consent that the proceedings may be by information rather than by indictment.

*Date:* _____

_____
*William S. Lerach*
Defendant

_____
*John Keker*
*Keker & Van Nest*
Counsel for Defendant William S. Lerach

Before _____
　　　　　　　*Judicial Officer*

CR - 57 (5/00)[AO 455 Rev. 5/85]　　　WAIVER OF INDICTMENT

EXHIBIT B

## STATUTE OF LIMITATIONS WAIVER AGREEMENT
## BETWEEN WILLIAM S. LERACH AND THE UNITED STATES
## ATTORNEY'S OFFICE FOR THE CENTRAL DISTRICT OF CALIFORNIA

### Dated September 17, 2007

### Effective as of the Effective Date of the Plea Agreement
### Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)
### in the Matter of United States v. William S. Lerach,
### Cr. 07-___-JFW

This Statute of Limitations Waiver Agreement ("Waiver") is entered into between William S. Lerach ("LERACH") and the United States Attorney's Office for the Central District of California ("the USAO"), in connection with a Plea Agreement Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) in the matter of United States v. William S. Lerach, Cr. No. 07-___-JFW (hereinafter "United States v. Lerach").

### RECITALS

WHEREAS, LERACH has entered into a Plea Agreement Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("the Binding Plea Agreement") to resolve a pending criminal investigation in the Central District of California;

WHEREAS, pursuant to the Binding Plea Agreement LERACH has agreed to plead guilty to a one-count Information charging him with conspiracy to obstruct justice and to make material false declarations under oath, in violation of Title 18, United States Code, Section 371 ("the Information");

WHEREAS, pursuant to the Binding Plea Agreement, LERACH has agreed to waive any affirmative defenses he may have, including



any applicable statute of limitations, relating to the conduct charged in the Information;

NOW, THEREFORE, IT IS HEREBY AGREED as follows:

LERACH hereby waives any affirmative defense based on the statute of limitations or any claims relating to preindictment delay relating to the conduct charged in the Information;

This Waiver shall be effective upon the effective date of the Binding Plea Agreement; and

This Waiver shall be deemed void and shall no longer have any effect in the event that the Court presiding over the matter of United States v. Lerach refuses to accept the Binding Plea Agreement.

READ AND AGREED TO:

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

_____      9·17·2007
DOUGLAS A. AXEL                       Date
RICHARD E. ROBINSON
ROBERT J. McGAHAN
Assistant United States Attorneys
Major Frauds Section

WILLIAM S. LERACH:


_____      _____
WILLIAM S. LERACH                     Date



_____      _____
JOHN W. KEKER                         Date
Keker & Van Nest
Counsel for William S. Lerach

any applicable statute of limitations, relating to the conduct charged in the Information;

NOW, THEREFORE, IT IS HEREBY AGREED as follows:

LERACH hereby waives any affirmative defense based on the statute of limitations or any claims relating to preindictment delay relating to the conduct charged in the Information;

This Waiver shall be effective upon the effective date of the Binding Plea Agreement; and

This Waiver shall be deemed void and shall no longer have any effect in the event that the Court presiding over the matter of United States v. Lerach refuses to accept the Binding Plea Agreement.

READ AND AGREED TO:

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA


_____          _____
DOUGLAS A. AXEL                    Date
RICHARD E. ROBINSON
ROBERT J. McGAHAN
Assistant United States Attorneys
Major Frauds Section

WILLIAM S. LERACH:

_____          9/17/07
WILLIAM S. LERACH                  Date


_____          9/17/07
JOHN W. KEKER                      Date
Keker & Van Nest
Counsel for William S. Lerach

## CERTIFICATIONS

I, William S. Lerach, have read this Statute of Limitations Waiver carefully and discussed it with my counsel, John W. Keker of Keker & Van Nest. I understand the terms of this Statute of Limitations Waiver, and I voluntarily, knowingly, and willfully agree to all of those terms, after due consideration and without force, threat, or coercion. No promises, representations, or inducements, other than those set forth in this Statute of Limitations Waiver and the Binding Plea Agreement, have been made to cause me to enter into this Statute of Limitations Waiver. I am satisfied with the representation that Keker & Van Nest have provided to me in this matter.

_____          9/17/07
WILLIAM S. LERACH                         Date

I am counsel for William S. Lerach in this matter. I have carefully reviewed and discussed the terms of this Statute of Limitations Waiver with Mr. Lerach. To the best of my knowledge, his decision to enter into this Agreement was informed and voluntary.

_____          9/17/07
JOHN W. KEKER                             Date
Keker & Van Nest
Counsel for William S. Lerach

<u>CERTIFICATE OF SERVICE</u>

I, **Temeria Wylie,** declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of: **PLEA AGREEMENT FOR DEFENDANT WILLIAM S. LERACH PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 11 (c)(1)(C)**

service was:     **John Keker, Esq.**
                 **710 Sansome Street**
                 **San Francisco, California 94111**

| | |
|---|---|
| [] Placed in a closed envelope, for collection and interoffice delivery addressed as follows: | [**X**] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows: |
| [] By hand delivery addressed as follows: **IN COURT** | [] By e-mail as follows [] By facsimile as follows |
| [] By messenger as follows: | [] By federal express as follows: |

This Certificate is executed on **September 18, 2007**, at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

_____
**TEMERIA WYLIE**