1   THOMAS P. O'BRIEN
    United States Attorney
2   GEORGE S. CARDONA
    Chief Assistant United States Attorney
3   DOUGLAS A. AXEL
    Assistant United States Attorney
4   Chief, Major Frauds Section
    RICHARD E. ROBINSON
5   ROBERT J. McGAHAN (Cal. State Bar No. 196568)
    Assistant United States Attorneys
6       1100 United States Courthouse
        312 North Spring Street
7       Los Angeles, California 90012
        Telephone:  (213) 894-0713/5420
8       Facsimile:  (213) 894-0141
        email: robert.mcgahan@usdoj.gov
9
    Attorneys for Plaintiff
10  UNITED STATES OF AMERICA

11                  UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13  UNITED STATES OF AMERICA,    ) No. CR 07-964-JFW
                                 )
14          Plaintiff,           ) GOVERNMENT'S SENTENCING MEMORANDUM;
                                 ) EXHIBITS
15              v.               )
                                 ) [DECLARATION OF ROBERT J. McGAHAN
16  WILLIAM S. LERACH,           ) AND SUPPLEMENTAL EXHIBITS FILED
                                 ) UNDER SEAL]
17          Defendant.           )
                                 ) Sentencing Date: February 11, 2008
18                               ) Time: 9:00 a.m.
                                 ) Place: Courtroom of Hon. John F.
19  ─────────────────────────────)        Walter

20

21       Plaintiff, United States of America, by and through its

22  counsel of record, the United States Attorney's Office for the

23  Central District of California, hereby files it memorandum in

24  connection with the sentencing hearing for defendant William S.

25  ///

26  ///

27  ///

28  ///

1   Lerach.   This sentencing memorandum is based on the attached

2   memorandum of points and authorities and exhibits, the

3   declaration of Assistant United States Attorney Robert J. McGahan

4   and supplemental exhibits filed under seal, the files and records

5   of this case, and any argument advanced at the sentencing hearing

6   on February 11, 2008.

7   Dated: January 28, 2008          Respectfully submitted,

8                                    THOMAS P. O'BRIEN
                                     United States Attorney
9
                                     GEORGE S. CARDONA
10                                   Chief Assistant United States
                                     Attorney
11
                                     DOUGLAS A. AXEL
12                                   Assistant United States Attorney
                                     Chief, Major Frauds Section
13

14
                                     _____*Robert J. McGahan*_____
15                                   RICHARD E. ROBINSON
                                     ROBERT J. McGAHAN
16                                   Assistant United States Attorneys

17
                                     Attorneys for Plaintiff
18                                   United States of America

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

A. INTRODUCTION

On October 29, 2007, defendant William S. Lerach ("defendant") pled guilty to a one-count Information charging him with conspiracy to obstruct justice and to submit false testimony in federal judicial proceedings, in violation of Title 18, United States Code, Section 371.  Defendant's guilty plea arose from his participation in a conspiracy perpetrated by the law firm of Milberg Weiss Bershad Hynes & Lerach LLP (now known as "Milberg Weiss LLP") ("Milberg Weiss") and its senior partners to conceal secret kickbacks paid to named plaintiffs in class action cases litigated throughout the United States.[1]

The Probation Office has prepared a Pre-Sentence Report ("PSR") in which, applying Section 2J1.3 (perjury) of the November 2001 version of the United States Sentencing Guidelines ("Sentencing Guidelines"), it calculates defendant's total offense level to be **14**.  The PSR further recommends that the Court accept the binding plea agreement entered into between the government and defendant and sentence defendant to a fifteen-month term of imprisonment, which falls at the low-end of the determined range.

---

[1]  Defendant's guilty plea is related to the following cases now pending before this Court: United States v. Milberg Weiss LLP, et al., Cr. No. 05-587(D)-JFW; United States v. David J. Bershad, Cr. No. 05-587(B)-JFW; United States v. Steven G. Schulman, Cr. No. 05-587(C)-JFW; United States v. Seymour M. Lazar, Cr. No. 05-587(D)(E)-JFW; United States v. Steven Cooperman, Cr. No. 06-776(A)-JFW; United States v. Howard J. Vogel, Cr. 06-320-JFW; and United States v. Richard Purtich, Cr. No. 06-400-JFW.

1

1    For the reasons set forth below, the government believes

2  that Section 2J1.2 (obstruction of justice) of the November 2007

3  version of the Sentencing Guidelines applies and, therefore,

4  defendant's total offense level is **18**.[2]  Accordingly, the

5  relevant sentencing range for defendant should be 27-33 months.

6  For the reasons also described below, the government respectfully

7  urges the Court to accept the parties' binding plea agreement and

8  sentence defendant to a term of incarceration of twenty-four

9  months; order defendant to pay a fine of $250,000; and place

10 defendant on supervised release for a period of two years

11 following his release from the custody of the United States

12 Bureau of Prisons.

13 B.   FACTUAL BACKGROUND

14    1.   Introduction

15    From beginning in or before 1979 and continuing at least

16 into 2005, the law firm of Milberg Weiss and certain of its

17 senior partners (hereafter, "the conspiring partners"), agreed to

18 and did secretly pay kickbacks to certain individuals to serve as

19

20    [2]  In January 2003, the relevant Sentencing Guidelines
21 governing defendant's offense conduct, Sections 2J1.2
   (obstruction of justice) and 2J1.3 (perjury), were amended in
22 response to the Sarbanes-Oxley Act of 2002.  With respect to
   Section 2J1.2, the amendments provided for an increase of two
23 levels for the base offense level (from 12 to 14), and included
   an additional "specific offense characteristic" which provides
24 for a 3-level upward adjustment where the "obstruction was
   otherwise extensive in scope."  U.S.S.G. § 2J1.2(b)(3)(C).  With
25 respect to Section 2J1.3, the amendments provided for an increase
   of two levels for the base offense level (from 12 to 14).
26 Defendant does not appear to dispute that, if Section 2J1.2 of
27 the 2007 Sentencing Guidelines applies, the resulting total
   offense level is 18.
28

2

1  named plaintiffs in class action cases brought by Milberg Weiss

2  in federal and state courts.  See generally PSR, ¶¶ 10-19;

3  Statement of Facts in Support of William S. Lerach Plea Agreement

4  ("Lerach Statement of Facts") (attached hereto as Exhibit 1), ¶¶

5  1-10; Statement of Facts in Support of David J. Bershad Plea

6  Agreement ("Bershad Statement of Facts"), ¶¶ 1-13 (attached

7  hereto as Exhibit 2); Second Superseding Indictment, United

8  States v. Milberg Weiss LLP, et al., Cr. No. 05-587(D)-JFW

9  ("SSI") (attached hereto as Exhibit 3).[3]  Such payments were

10  unlawful under the laws and regulations of New York and

11  California, SSI ¶ 26, and the concealment of the payments impeded

12  the ability of courts to assess the appropriateness of approving

13  certain lawsuits to proceed as class actions and the ability of

14  the named plaintiffs and Milberg Weiss to represent the interests

15  of other class members.  Id., ¶ 29.

16      The individuals to whom the Milberg Weiss conspiring

17  partners agreed to make secret payments were, among others: (a)

18  Steven G. Cooperman and various associates; (b) Seymour M. Lazar;

19  (c) a group of three related plaintiffs who resided in Florida

20  (collectively "the Florida Plaintiffs"); and (d) Howard Vogel.

21  Bershad Statement of Facts, ¶ 6.  To conceal and disguise the

22  secret payments to the aforementioned individuals, conspiring

23  partners sometimes delivered them in cash.  Id., ¶ 12; PSR, ¶ 12;

24

25      [3]  See also Statement of Facts in Support of Seymour Lazar
26  Plea Agreement ("Lazar Statement of Facts"), ¶¶ 1-7 (attached
   hereto as Exhibit 4); and Statement of Facts in Support of Howard
27  Vogel Plea Agreement ("Vogel Statement of Facts"), ¶¶ 2-43
   (attached hereto as Exhibit 5).
28

1  see also Under Seal Declaration of Robert J. McGahan ("Under Seal

2  McGahan Decl."), ¶ 2.  The cash to make such secret payments was

3  maintained by co-conspirator David J. Bershad, who collected the

4  cash from other conspiring partners, including defendant.

5  Bershad Statement of Facts, ¶ 12(a).  In addition, the conspiring

6  partners would cause payments to be made to named plaintiffs

7  through the guise of "referral fees" or "professional fees" to

8  intermediary lawyers and law firms.  In truth and in fact, as the

9  conspiring partners knew, the payments to the intermediary

10  lawyers and law firms were not "referral fees," but were a means

11  to disguise the payments made to the individuals serving as named

12  plaintiffs.

13      By way of example, defendant caused payments to be made to

14  Steven Cooperman through the false guise of "referral fees" paid

15  to attorneys Richard Purtich and James Tierney.  Lerach Statement

16  of Facts, ¶ 12; Bershad Statement of Facts, ¶ 24.

17      In addition, defendant caused payments to be made to

18  intermediary attorneys for the benefit of Seymour Lazar.  In or

19  about June 1985, defendant caused co-conspirator Bershad to issue

20  a $25,000 check to an entertainment attorney in Los Angeles and

21  associate of Lazar, on Lazar's behalf.  Under Seal McGahan Decl.,

22  ¶¶ 3-4.  Defendant knew that this payment was, in fact, for the

23  benefit of co-conspirator Lazar, and not for legal services

24  provided by this entertainment attorney.  Id.

25      As another example, in or about 1986 and 1987, defendant

26  caused checks in the combined amount of $80,000 to be paid on

27  Lazar's behalf to another attorney in Los Angeles, who was then

28

4

1   representing Lazar in a real estate dispute.  Under Seal McGahan

2   Decl., ¶¶ 6-10.  Furthermore, defendant knew that his conspiring

3   partners were making secret payments to at least one of the

4   Florida Plaintiffs.  Indeed, when recruiting others into the

5   scheme, defendant touted the firm's regular and substantial

6   payments to one of the Florida Plaintiffs.  Id., ¶¶ 11-12.

7   C.    THE PRESENTENCE REPORT

8       The United States Probation Office ("Probation Office")

9   prepared a PSR in connection with defendant's sentencing.  In the

10  PSR, the Probation Office applied the Sentencing Guidelines in

11  effect as of November 1, 2001.  PSR, ¶ 25.  The PSR applied this

12  version because it found there was "no evidence that Lerach

13  personally committed any overt acts after 2002," although it

14  recognized that defendant remained a partner of Milberg Weiss

15  after 2002 while the conspiracy continued.  PSR, ¶ 25.[4]

16  Acknowledging that there was factual support for the government's

17  position that the November 2007 Sentencing Guidelines should

18  apply (with a correspondingly higher total offense level), the

19  PSR nonetheless concluded that the November 2001 Guidelines

20  should apply because the "rule of lenity" "resolves any issues in

21  favor of the defendant."  Id.  Therefore, the PSR, applying

22  Section 2J1.3 (the applicable Guideline concerning the offense of

23  perjury) concluded that defendant's total offense level should be

24  calculated at **14**.

25      The PSR further recommended that the Court accept the plea

26

27      [4]   The government understands that defendant remained a
    partner of Milberg Weiss until April 30, 2004.
28

5

1  agreement, sentence defendant to a term of imprisonment of

2  fifteen months, order defendant to pay a fine of $250,000 (taking

3  into account defendant's agreement to forfeit $7.5 million to the

4  United States), and order defendant to serve a period of

5  supervised release for two years.

6  D.    GOVERNMENT'S SENTENCING POSITION

7       1.    Objections to the PSR

8       In a submission filed with the Probation Office on January

9  9, 2008, the government objected to the PSR insofar as it applied

10  the November 2001 Sentencing Guidelines to defendant's offense

11  conduct, and calculated defendant's total offense level at **14**.

12  See PSR, ¶¶ 25, 26-37.  The government respectfully maintains

13  that Section 2J1.2 (the Guideline concerning the offense of

14  obstruction of justice) of the November 2007 Sentencing

15  Guidelines should apply to defendant's conduct.  This would

16  result in a total offense level of **18.**

17       The PSR applied Section 2J1.3 (perjury) of the November 2001

18  Guidelines, concluding that it was "the guideline most

19  appropriate for the offense conduct charged in the count of which

20  the defendant was convicted."  PSR, ¶ 28.  The PSR also noted

21  that application of Section 2J1.2 (obstruction of justice) would

22  yield an identical result under the November 2001 Guidelines.

23  The government disagrees that Section 2J1.3 is the most

24  appropriate guideline.  Defendant pled guilty to conspiracy to

25  obstruct justice (18 U.S.C. § 1503) and to commit perjury (18

26  U.S.C. § 1623).  The Guideline most applicable is Section 2J1.2

27  because every federal class action case tainted by a kickback or

28

1  a promise thereof included acts, beyond perjury, designed to

2  corruptly obstruct those proceedings. See, e.g., Lerach Statement

3  of Facts, ¶ 8 ("At all relevant times, LERACH, other conspiring

4  partners, and the paid plaintiffs understood that, to the extent

5  necessary, they would make or cause to be made false and/or

6  misleading statements in documents filed in federal Class Actions

7  (including complaints, motions, and under-oath certifications) .

8  . . ."). Thus, such conduct was broader in scope than particular

9  acts of perjury and, therefore, Section 2J1.2 more appropriately

10 captures defendant's conduct.  The distinction between the

11 possibly applicable guidelines matters under the November 2007

12 Sentencing Guidelines because Section 2J1.2 yields a higher total

13 offense level than under Section 2J1.3.

14     Further, the conspiracy to which defendant pled guilty

15 continued past January 2003, when the Sentencing Guidelines were

16 amended; the conduct that continued past January 2003 was

17 reasonably foreseeable to defendant; and defendant did not

18 withdraw from the conspiracy prior to that time.[5]  United States

19 v. Marks, 38 F.3d 1009, 1016 (8th Cir. 1994) ("[A]pplying the

20 Sentencing Guidelines to a conspiracy that straddles the

21 Sentencing Guidelines effective date is not violative of the ex

22 post facto clause.  We have noted that with conspiracy and other

23 continuing offenses it is the completion date of the offense that

24 controls the use of the Sentencing Guidelines to be applied.").

25 _____

26     [5]  Pursuant to 18 U.S.C. §§ 3553(a)(4), (5), the Court shall
   impose a sentence based on the Sentencing Guidelines that are in
27 effect on the sentencing date, unless to do so would violate the
   ex post facto clause of article I, § 9 of the Constitution.
28

7

1    In this case, defendant's co-conspirators undertook numerous

2  acts in furtherance of the conspiracy following January 2003 that

3  were within the scope of the conspiratorial agreement and were

4  reasonably foreseeable to defendant.  <u>See</u> SSI, Overt Acts 75-84.

5  These particular actions related to Howard Vogel, who was

6  recruited into the scheme in 1991.  Even allowing, as defendant

7  apparently maintains, that defendant may not have known Howard

8  Vogel individually or had any dealings with him, Vogel's

9  recruitment into the scheme and continuing participation therein

10  was well within the scope of defendant's agreement with other

11  Milberg Weiss conspiring partners and paid plaintiffs.

12    Specifically, Vogel was recruited into the conspiracy by co-

13  conspirator Bershad and another conspiring partner ("Partner E")

14  in 1991.  At that time, Cooperman, Lazar, and the Florida

15  Plaintiffs were active participants in the conspiracy.  Defendant

16  knew that Milberg Weiss had recruited Cooperman, Lazar, and the

17  Florida Plaintiffs to serve as paid plaintiffs and indeed

18  facilitated payments to two of them (Cooperman and Lazar).

19  Defendant also provided cash to co-conspirator Bershad, which was

20  then used to pay, among others, the Florida Plaintiffs.

21    Because Vogel's recruitment into the scheme would have been

22  reasonably foreseeable to defendant, it would also have been

23  reasonably foreseeable that Milberg Weiss would seek to obtain

24  the proceeds of tainted cases involving Vogel after the

25  government's investigation became known in January 2002.  Indeed,

26  obtaining significant fee awards to enrich the Milberg Weiss

27  conspiring partners was a primary objective of the conspiracy.

28

1  See United States v. Walker, 653 F.2d 1343, 1349 (9th Cir. 1981)

2  (conspiracy continues until proceeds of the unlawful agreement

3  are obtained).  Defendant was well aware that complex class

4  action cases are often litigated for years. For example, Milberg

5  Weiss engaged in obstructive conduct and suborned perjury from

6  Vogel in the Oxford Health case in 1997.  SSI, Overt Acts 66-68;

7  Vogel Statement of Facts, ¶¶ 22-27.  Milberg Weiss, however, did

8  not actually reap the proceeds of this illegal conduct until June

9  2003 when it obtained a $40 million fee award in the Oxford

10  Health matter.  At that time, defendant was still a senior

11  partner of the firm, holding a 13.5% interest in the firm, and

12  profiting greatly from that position.  Thus, of the $40 million

13  fee award in Oxford Health, defendant earned approximately

14  $2,000,000 based on his ownership interest in Milberg Weiss.

15      Defendant would also have reasonably expected that paid

16  plaintiffs would demand payment for cases initiated before

17  January 2003, but settled thereafter.  Yet defendant never

18  undertook any actions to alert courts after the government's

19  investigation became known in January 2002 of the underlying

20  unlawful conduct which corrupted particular pending class

21  actions.

22      Moreover, continuing unlawful payments to co-conspirator

23  plaintiffs, such as that made to Vogel in the Oxford Health

24  matter, would have been reasonably foreseeable to defendant

25  because Milberg Weiss would have wanted to avoid alienating a co-

26  conspirator and a potential co-operating witness.

27      Therefore, the conspiracy of which defendant was a member

28

1  continued at least through 2004, while defendant was a partner at

2  Milberg Weiss, and the government is aware of no evidence

3  whatsoever that defendant undertook any measures to withdraw from

4  the conspiracy.  Cf. United States v. Kilby, 443 F.3d 1135, 1139

5  (9th Cir. 2006) ("A conspirator can withdraw from a conspiracy

6  by: (1) disavowing the unlawful goal of the conspiracy; (2)

7  affirmatively acting to defeat the purpose of the conspiracy; or

8  (3) taking definite, decisive, and positive steps to disassociate

9  himself from the conspiracy.").  Accordingly, the November 2007

10  Sentencing Guidelines should apply.

11       For example, in United States v. Zimmer, 299 F.3d 710, 718

12  (8th Cir. 2002), the Eighth Circuit rejected the defendant's

13  argument that the district court applied the incorrect version of

14  the Guidelines in a conspiracy case.  There, as here, defendant

15  argued that he had withdrawn from the conspiracy prior to the

16  effective date of the Sentencing Guidelines employed to calculate

17  defendant's sentence.  In rejecting defendant's argument, the

18  court stated:

19          We reject [defendant's] argument that he had withdrawn
            from the conspiracy before the amended version of the
20          Guidelines went into effect. [Defendant] bears the
            burden of proving that he withdrew from the conspiracy.
21          [Defendant] must do more than demonstrate that he
            undertook no conspiratorial activity after the cut-off
22          date; he must demonstrate that he took affirmative
            action to withdraw from the conspiracy either by making
23          a clean breast to the authorities or by communicating
            his withdrawal in a manner reasonably calculated to
24          reach his coconspirators.

25  Zimmer, 299 F.3d at 718; see also United States v. Foote, 2003 WL

26  22466158 (D. Kan. Jul. 31, 2003) (applying later version of

27  Guidelines because conspiracy continued after effective date of

28

10

1   Guidelines and there was no evidence that defendant withdrew from

2   the conspiracy before such effective date); <u>United States v.</u>

3   <u>Eisen</u>, 974 F.2d 246, 268 (2d Cir. 1992) ("Defendants committing

4   no acts in furtherance of a conspiracy after the effective date

5   of the Guidelines are not subject to <u>ex</u> <u>post</u> <u>facto</u> punishment

6   because they could have taken steps to prevent the final element

7   of the crime from occurring.").  Here, there is no evidence that

8   defendant ever withdrew from the conspiracy, at least before

9   May 1, 2004 when defendant withdrew from Milberg Weiss as a

10  partner.[6]  To the contrary, defendant continued to receive in

11  2002 and continuing through at least May 1, 2004 a substantial

12  portion of the proceeds from the conspiracy, including more than

13  $ 2,000,000 of attorneys' fees from class action cases involving

14  the paid plaintiffs.  Accordingly, the PSR should employ the

15  Guidelines now in effect to calculate defendant's total offense

16  level.[7]

17      Under the November 2007 Guidelines, defendant's total

18  offense level should be calculated at **18**, as follows:

19

20      [6]  The PSR purported to apply the "rule of lenity" in
    resolving in defendant's favor the question of which Guidelines
21  Manual governed.  PSR, ¶ 25.  The government respectfully submits
    that the PSR erred because the "rule of lenity" does not apply to
22  disputed factual issues such as whether defendant remained a
    member of the conspiracy after January 2003.  <u>United States v.</u>
23  <u>Gonzalez</u>, 407 F.3d 118, 124 (2d Cir. 2005) ("the rule of lenity
    is not applicable to a district court's fact-finding role at
24  sentencing"); <u>but see</u> <u>United States v. Footman</u>, 66 F. Supp. 2d
    83, 92 n.15 (D. Mass. 1999).
25

26      [7]  The guidelines calculations under the January 2003
    amendments to and November 2007 version of the Sentencing
27  Guidelines are the same; therefore, the current version of the
    Sentencing Guidelines should be applied.
28

11

| | | |
|---|---|---|
| Base Offense Level: | 14 | [U.S.S.G. § 2J1.2(a)] |
| Specific Offense Characteristics | | |
| Substantial interference with administration of justice: | +3 | [U.S.S.G. § 2J1.2(b)(2)] |
| Obstruction extensive in scope: | +2 | [U.S.S.G. § 2J1.2(b)(3)] |
| Abuse of position of trust: | +2 | [U.S.S.G. § 3B1.3] |
| Acceptance of Responsibility: | -3 | [U.S.S.G. § 3E1.1(b)][8] |
| Total Offense Level | **18** | |

2.   This Court Should Accept the Binding Plea Agreement and Sentence Defendant to a Term of Imprisonment of Twenty-Four Months

Regardless of the Court's resolution of the disputed Sentencing Guidelines issue, the government respectfully submits that a sentence of 24 months incarceration is appropriate in this

---

[8]   Were the Court to agree with the PSR and conclude that Section 2J1.3 (perjury) was the appropriate guideline under the November 2007 Sentencing Guidelines, defendant's total offense level would be **16**, calculated as follows:

| | | |
|---|---|---|
| Base Offense Level: | 14 | [U.S.S.G. § 2J1.3(a)] |
| Specific Offense Characteristics | | |
| Substantial interference with administration of justice: | +3 | [U.S.S.G. § 2J1.3(b)(2)] |
| Abuse of position of trust: | +2 | [U.S.S.G. § 3B1.3] |
| Acceptance of Responsibility: | -3 | [U.S.S.G. § 3E1.1(b)] |
| Total Offense Level: | **16** | |

1   case and, therefore, this Court should accept the binding plea

2   agreement arrived at by the government and defendant.  Title 18,

3   United States Code, Section 3553(a) mandates that a sentencing

4   court "shall impose a sentence sufficient, but not greater than

5   necessary, to comply with the purposes" set forth in the

6   Sentencing Reform Act of 1984.  Those purposes are:

7          (a)   to reflect the seriousness of the offense, to promote

8                respect for the law, and to provide just punishment for

9                the offense;

10         (b)   to afford adequate deterrence to criminal conduct;

11         (c)   to protect the public from further crimes of the

12               defendant; and

13         (d)   to provide the defendant with needed educational or

14               vocational training, medical care, or other

15               correctional treatment in the most effective manner . .

16               . .

17   18 U.S.C. § 3553(a).

18         In this case, a twenty-four months sentence of incarceration

19   satisfies the factors set forth in Section 3553(a).

20               a.   <u>A Twenty-Four Month Sentence Is Necessary to
                      Promote Respect for the Law, to Provide Just</u>

21                    <u>Punishment, and to Afford Adequate Deterrence</u>

22         This Court should sentence defendant to a term of twenty-

23   four months of incarceration to properly deter other attorneys

24   from repeating defendant's criminal misconduct, to engender

25   proper regard for the law, and to provide for adequate punishment

26   of defendant.  Here, defendant participated in a conspiracy

27   which, by his own admission, spanned a period of at least two

28

13

1    decades.   The conduct at issue amounted to a systematic effort to

2    obstruct and undermine the lawful functioning of the judicial

3    system in hundreds of lawsuits brought in federal and state

4    courts throughout the United States.   Worse yet, the secret

5    kickback scheme in which defendant participated struck at "the

6    very heart of the fiduciary duties owed to absent class members

7    by a lead plaintiff and a lead counsel in a class action."   In re

8    Chiron Corporation Securities Litigation, 2007 WL 4249902 at * 14

9    (N.D. Cal. Nov. 30, 2007).   In purporting to represent absent

10   class members, defendant served in a position of "public trust,"

11   Sweet v. Pfizer, 232 F.R.D. 360, 371 (C.D. Cal. 2005), yet he

12   thoroughly betrayed that trust through his own criminal conduct.

13   Indeed, defendant used his trusted position as an attorney to

14   cheat the legal system, and relied on the attorney-client

15   privilege to serve as a wall of silence behind which the criminal

16   scheme thrived and escaped detection for more than twenty years.

17         Moreover, defendant substantially profited from his

18   participation in the conspiracy.   Defendant, one of the two most

19   senior partners of Milberg Weiss, at times owned a substantial

20   percentage of the equity in Milberg Weiss, and thereby was

21   entitled to a significant share of the profits generated by the

22   illegal conduct.

23         Therefore, the government respectfully submits that the

24   fifteen-month sentence of incarceration recommended by the PSR

25   does not adequately promote respect for the law, nor does it

26   provide just punishment for defendant's criminal conduct.   More

27   importantly, a sentence of fifteen-months incarceration would not

28

1   provide adequate deterrence to other attorneys tempted to abuse

2   their positions as lawyers for personal gain.

3              b.    <u>A Sentence Greater Than Twenty-Four Months Is Not
                     Necessary in this Case</u>

4

5        Although the government believes that defendant's total

    offense level under the relevant Sentencing Guidelines is 18,

6
    with a corresponding sentencing range of 27-33 months
7
    imprisonment, the government nonetheless believes that a sentence
8
    of twenty-four months incarceration in this case satisfies the
9
    sentencing factors set forth in Section 3553(a).
10
         First, the plea agreement arrived at in this case results
11
    from the unsolicited initiation of plea negotiations by defendant
12
    <u>before</u> the government had notified defendant that he would face
13
    indictment.  In addition, that unsolicited initiation of plea
14
    discussions by defendant included, from the outset, a recognition
15
    that defendant would be required to plead guilty to a serious
16
    felony charge; serve a period of incarceration in prison; pay a
17
    substantial monetary penalty by way of fine and forfeiture; and
18
    suffer likely expulsion from the bar.
19
         Second, defendant's guilty plea virtually guarantees that he
20
    will never again be in a position to engage in the criminal
21
    conduct at issue here.  Defendant has resigned from his former
22
    law firm and, as of December 21, 2007, defendant is ineligible to
23
    practice law, having been placed on interim suspension from the
24
    bar as a result of his guilty plea in this case.  Further,
25
    defendant almost assuredly faces summary disbarment upon his
26
    conviction becoming final.  <u>In re Paguirigan</u>, 25 Cal. 4th 1, 4
27
    n.3 (2001) (discussing Cal. Bus. & Prof. Code § 6102(c) providing
28

                                    15

1  for summary disbarment for lawyer with felony conviction if "an

2  element of the offense is . . . [to] make or suborn a false

3  statement, or involved moral turpitude.").

4        Third, defendant is one of the most prominent lawyers in the

5  United States, and confronts a significant 24-month sentence in

6  federal prison.  Defendant, who will be sixty-two years old upon

7  commencement of his sentence, now stands in disgrace before the

8  profession of which he considered himself a national leader, and

9  the courts before which defendant practiced.  Given what is

10 surely an ignominious conclusion to an otherwise successful

11 career, a period of incarceration greater than twenty-four months

12 is not necessary to promote the sentencing goals set forth in

13 Section 3553(a).  This is particularly so given the apparent

14 absence of affirmative acts undertaken by defendant to further

15 the conspiracy for a considerable time.

16               c.   This Court Should Accept the Plea Agreement

17        Finally, the government requests that the Court accept the

18 binding plea agreement in this case.  As reflected in the plea

19 agreement itself, the parties are unable to agree on which

20 Sentencing Guidelines apply.  The twenty-four months sentencing

21 "cap" provided for in the plea agreement reflects a responsible

22 compromise between the parties' relative sentencing positions.

23 If defendant is correct in his legal position, defendant is

24 exposed to a Guidelines sentence higher than the applicable range

25 established by offense level 14 (15-21 months).  If the

26 government is correct in its legal position, it has agreed to a

27 sentence that is modestly lower than the low end of the

28

                                  16

1  applicable range set forth by offense level 18 (27-33 months).

2  If the Court were to conclude Section 2J1.3 (perjury) was the

3  most appropriate guideline under the November 2007 Guidelines

4  (resulting in a total offense level of **16**), a sentence of 24

5  months incarceration would fall squarely in the mid-range of the

6  applicable sentencing range of 21-27 months.  Moreover, the

7  government respectfully submits that the financial component of

8  the binding plea agreement, which requires defendant to pay $8

9  million in fine and forfeiture, constitutes an appropriate

10  monetary penalty.  The government understands that this sum

11  constitutes a significant percentage of defendant's liquid net

12  worth.  PSR, ¶¶ 77-78.

13     The government notes that, in reaching the binding plea

14  agreement in this case, the government and defendant were

15  assisted by another district judge in this district who, familiar

16  with the facts and legal issues surrounding defendant's case,

17  guided the parties to the compromise agreement now before the

18  Court.  The binding plea agreement permits the Court to mete out

19  serious punishment to defendant; encompasses a significant

20  financial penalty; and sends a compelling message to every

21  lawyer, no matter how prominent or powerful, that a jail cell

22  awaits those who choose to abuse the privilege of practicing law

23  by engaging in criminal conduct.

24

25

26

27

28

17

E.    CONCLUSION

        For the reasons set forth above, the government respectfully requests that the Court accept the binding plea agreement in this case; sentence defendant to the custody of the United States Bureau of Prisons for a term of twenty four months incarceration; impose a fine of $250,000; and order defendant to serve a term of supervised release of two years upon his release from custody.

Dated: January 28, 2008          Respectfully submitted,

                                 THOMAS P. O'BRIEN
                                 United States Attorney

                                 GEORGE S. CARDONA
                                 Chief Assistant United States
                                 Attorney

                                 DOUGLAS A. AXEL
                                 Assistant United States Attorney
                                 Chief, Major Frauds Section


                                   *Robert J. McGahan*
                                 RICHARD E. ROBINSON
                                 ROBERT J. McGAHAN
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 United States of America

18